IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Danell Tomasella, on behalf of herself and all
others similarly situated,

                                   Plaintiff,

          v.

THE HERSHEY COMPANY, a Delaware
Corporation, and HERSHEY CHOCOLATE &
CONFECTIONERY CORPORATION, a
Delaware Corporation,

                                   Defendants.

Case No. 1:18-cv-10360

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    OVERVIEW ................................................................................................... 1

II.   PARTIES ....................................................................................................... 7

III.  JURISDICTION AND VENUE ................................................................... 8

IV.   FACTUAL ALLEGATIONS ........................................................................ 9

    A.   The Worst Forms of Child Labor in the Ivory Coast Are Used to
        Produce Hershey's Chocolate Products. ........................................... 9

        1.   In 2001 the Industry Agrees to the Harkin-Engel Protocol
            and Promises to Eliminate the Worst Forms of Child Labor
            in the Ivory Coast by 2005 .......................................................... 11

        2.   The Industry Breaks this Promise Repeatedly in a Series of
            Follow-up Statements Postponing Their Deadline to 2008,
            to 2010, and Now to 2020............................................................ 12

        3.   Meanwhile the Worst Forms of Child Labor in the Ivory
            Coast Continue – with a Recent Report Commissioned by
            the U.S. Department of Labor Finding That They Have
            Become Even More Prevalent. .................................................... 14

    B.   Hershey Fails to Disclose the Use of the Worst Forms of Child
        Labor in Its Supply Chain. ................................................................ 18

    C.   Hershey Recognizes that the Use of Child or Slave Labor in its
        Supply Chain Is Wrong. .................................................................... 23

    D.   Hershey's Use of the Worst Forms of Child Labor in Its Chocolate
        Products Supply Chain Is Material to Consumers Who Are
        Generally Left Unaware Without Disclosure at the Point of Sale. ......... 25

V.    CLASS ACTION ALLEGATIONS ............................................................ 28

VI.   CAUSES OF ACTION ................................................................................ 30

    COUNT I VIOLATION OF THE MASSACHUSETTS CONSUMER
    PROTECTION ACT (G.L. CHAPTER 93A) .................................................. 30

    COUNT II UNJUST ENRICHMENT ............................................................ 33

JURY TRIAL DEMAND .................................................................................... 34

Plaintiff Danell Tomasella ("Plaintiff") brings this action on behalf of herself and all others similarly situated against THE HERSHEY COMPANY and HERSHEY CHOCOLATE & CONFECTIONERY CORPORATION ("Defendants" or "Hershey").  Plaintiff's allegations against Defendants are based upon information and belief and upon investigation of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon each Plaintiff's personal knowledge.

## I.      OVERVIEW

1.      America's largest and most profitable food companies should not tolerate child labor, much less child slave labor, anywhere in their supply chains.  These companies should not turn a blind eye to known human rights abuses or shirk from investigating and preventing potential human rights abuses by their suppliers, especially when the companies consistently and affirmatively represent that they act in a socially and ethically responsible manner.  When these food companies fail to uphold their responsibility for ensuring the absence of child and slave labor in their supply chains, their misconduct has the profound consequence of supporting and encouraging such labor.  And when these food companies fail to disclose the use of child and slave labor in their supply chains to consumers at the point of sale, they are deceived into buying products they would not have otherwise and thereby unwittingly supporting child and slave labor themselves through their product purchases.  Such food companies should be required to make restitution to the consumers they have deceived and to ensure the absence of child and slave labor in their supply chains in the future.

2.      Chocolate is perhaps the most beloved confectionary ingredient in the world.  Most major companies that purchase chocolate obtain it from sources in West Africa, including Ivory Coast and Ghana.

3.      Hershey is one of the largest and most profitable chocolate companies in the United States.  Hershey sources its food products from all over the globe. Among its products, Hershey markets and distributes chocolate products, including Hershey's Bars, Hershey's Kisses, Reese's, KitKat, Rolo, Heath, Skor, Special Dark, Krackel, Milk Duds, Whoppers, Mr. Goodbar, Almond Joy, Mounds, 5th Avenue, Symphony, Take5, Whatchamacallit, York Peppermint Patty, seasonal confectionary, and Hershey's baking bars, syrups, and spreads, which are made with cocoa beans from West Africa ("Chocolate Products").

4.      Although Hershey's corporate business principles and supplier code prohibit both child and slave labor, Hershey is aware that cocoa beans from West Africa are produced using child labor, including the Worst Forms of Child Labor as recognized by the United Nations:  the compulsory labor of trafficked children and the labor of children involving dangerous tools, transport of heavy loads, and exposure to toxic substances, *i.e.*, hazardous work.[1]

5.      The Bureau of International Labor Affairs of the U.S. Department of Labor confirms that cocoa beans from Ivory Coast have child and/or slave labor in the supply chain:[2]

| Country | Good | Child Labor | Forced Labor |
|---|---|---|---|
| Cote d'Ivoire | Cocoa | X | X |
| Cote d'Ivoire | Coffee | X | X |

6.      Recent findings demonstrate that "children in Côte d'Ivoire engage in the worst forms of child labor in the harvesting of cocoa."  Ivory Coast's "cocoa sector employed an estimated 1,203,473 child laborers ages 5 to 17, of which 95.9 percent were engaged in hazardous work in cocoa production."  Such work includes burning and clearing fields with

---

[1] http://www.ilo.org/ipec/facts/WorstFormsofChildLabour/lang--en/index.htm.
[2] http://www.dol.gov/ilab/reports/child-labor/list-of-goods/.

machetes, spraying pesticides, using sharp tools to break open cocoa pods, and carrying heavy loads of cocoa pods and water,[3] as the following depicts:


4


5

---

[3] https://www.dol.gov/sites/default/files/documents/ilab/reports/child-labor/CotedIvoire.pdf.

[4] Brian O'Keefe, *Behind a Bittersweet Industry*, Fortune (March 1, 2016), http://fortune.com/big-chocolate-child-labor/.



6



7

---

⁵ https://www.confectionerynews.com/Article/2014/09/08/Cocoa-child-slavery-case-against-Nestle-ADM-and-Cargill-proceeds.

⁶ http://valuenetworkissues.blogspot.com/2016/03/child-labor-and-chocolate_4.html.

7.      The Bureau of International Labor Affairs of the U.S. Department of Labor also reports that some of these "children from within Côte d'Ivoire, as well as migrant children from Benin, Burkina Faso, Guinea, Mali, Nigeria, and Togo, are working under conditions of forced labor on Ivoirian cocoa farms.  Based on the most recently available estimate from Tulane University, over 4,000 children work in conditions of forced labor in the production of cocoa in Côte d'Ivoire.  Some children are sold by their parents to traffickers, some are kidnapped, and others migrate willingly but fall victim to traffickers who sell them to recruiters or farmers, where they end up in conditions of bonded labor.  Some farmers buy the children and refuse to let them leave the farm until the debt of their purchase has been worked off.  The children are frequently not paid for their work; some of their wages are paid to the recruiter or trafficker.  These children are held against their will on isolated farms, are locked in their living quarters at night, and are threatened and beaten if they attempt to escape.  They are punished by their employers with physical abuse.  They are forced to work long hours, including overtime, and are required to work even when they are sick.  Some children are denied sufficient food by their traffickers and employers.  Some children are forced to perform dangerous tasks, including carrying heavy loads, using machetes and sharp tools, and applying pesticides and fertilizers."[8]

8.      A July 30, 2015, report entitled "Survey Research on Child Labor in West African Cocoa Growing Areas," prepared by the Payson Center for International Development of Tulane University and sponsored by the U.S. Department of Labor, found that during the time period from 2013 to 2014 over 1.1 million children in Ivory Coast were engaged in the most common Worst Forms of Child Labor, hazardous work, including the use of dangerous tools, transport of

---

[7] https://www.shreveporttimes.com/story/news/2016/01/13/tulane-report-highlights-child-labor-trends-chocolate-production/77697010/.

[8] http://www.dol.gov/ilab/reports/child-labor/list-of-products/index-country.htm#Cote-dIvoire.

heavy loads, and exposure to toxic substances.  This was up from the 791,181 children engaged

in such work at the time of the last survey in 2008 to 2009.  Put another way, the 22% of children

engaged in such labor in 2008 to 2009 had increased to 31% of children in 2013 and 2014.[9]

9.      "The USDOL-funded research found that over half of the children working on

cocoa farms have been injured in work-related activities."[10]  The 2015 Payson report found that

37% of those working in cocoa production experienced wounds/cuts while performing

agricultural work and 11% experienced muscle pain.  Thirty-one percent of children working in

cocoa production experienced "very bad pain" when injured, and 11% were unable to continue

working after being injured.[11]

10.     Thus, much of the world's chocolate is quite literally brought to us by the back-

breaking labor of children, in many cases under conditions of slavery.

11.     Notwithstanding its awareness of the Worst Forms of Child Labor used to

produce the cocoa beans used to make its Chocolate Products, Hershey does not disclose this to

consumers at the point of purchase.

12.     That the Worst Forms of Child Labor are in Hershey's supply chain for its

Chocolate Products is material to consumers not wishing to support such labor with their

purchasing power.  In the course of marketing and selling its Chocolate Products, however,

Hershey materially omits and does not disclose at the point of sale that its Chocolate Products

have child and slave labor in the supply chain.  Furthermore, Hershey does not disclose that

despite its awareness that child and slave labor is being used in its supply chains, Hershey has

not required all of its suppliers to remedy this human tragedy.  Hershey, as one of the largest

_____

[9] http://www.childlaborcocoa.org/index.php/2013-14-final-report.

[10] http://www.dol.gov/ilab/issues/child-labor/cocoa/.

[11] http://www.childlaborcocoa.org/index.php/2013-14-final-report.

companies in the world, can dictate the terms by which cocoa beans are produced and supplied to it, including the labor conditions in the supply chain.  But through its own inadequate efforts over the course of decades Hershey is presently not able to trace all of the cocoa beans that make up its Chocolate Products back to the cocoa plantations on which they are grown, much less ensure that the cocoa beans are not the product of child or slave labor.  And meanwhile Hershey continues to profit from the child and slave labor that is used to make its Chocolate Products. This is shameful.  Had Plaintiff and Class Members known the truth, they would not have purchased Hershey Chocolate Products or paid as much for them.

13.     Hershey's material omissions and failure to disclose at the point of sale is all the more appalling considering that Hershey's Corporate Social Responsibility Report state that "Hershey has zero tolerance for the worst forms of child labor in its supply chain."[12]  But Hershey does not live up to its own ideals.

14.     Accordingly, Hershey's conduct described herein violates the Massachusetts Consumer Protection Law, and results in its unjust enrichment.  Plaintiff brings this action on behalf of a Massachusetts class for damages, restitution, and injunctive relief, and any other relief deemed appropriate by the court to which this case is assigned.

## II.     PARTIES

15.     Plaintiff Danell Tomasella is and was at all relevant times a citizen of the State of Massachusetts and resides in Buzzards Bay, Massachusetts.  Plaintiff Tomasella has purchased Hershey Chocolate Products, including Hershey Kisses, Heath Bar, Skor, Hershey Bar with Almonds, and Milk Duds, at various retail stores including CVS, Stop & Shop, Target, and Walmart in Buzzards Bay and Plymouth, Massachusetts, from 2014 through the present.

---

[12] http://www.thehersheycompany.com/social-responsibility/shared-goodness/pdfs/Hershey2014CSRReport.pdf ("*Hershey's Corporate Social Responsibility Report*").

Plaintiff Tomasella saw the product packaging and labeling in retail stores where she purchased the Chocolate Products. Plaintiff would not have purchased the Chocolate Products or paid as much for them had Hershey disclosed the truth about the child and slave labor in the supply chain. Plaintiff Tomasella seeks damages, restitution, and injunctive relief requiring Hershey to cease its deceptive marketing.

16. Defendant The Hershey Company is a global chocolate food products company. The Hershey Company is incorporated in Delaware with its principal place of business in Hershey, Pennsylvania.

17. Defendant Hershey Chocolate & Confectionery Corporation is a subsidiary of The Hershey Company. The Hershey Chocolate & Confectionary Corporation is incorporated in Delaware with its principal place of business in Robinson, Illinois.

### III.    JURISDICTION AND VENUE

18. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because the amount in controversy for the Class exceeds $5,000,000, and the Class includes members who are citizens of a different state than Defendant.

19. This Court has personal jurisdiction over Defendant because it has offices and conducts substantial business in this district and throughout the State of Massachusetts.

20. Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants have marketed and sold Chocolate Products within this district, and a substantial number of the acts and omissions alleged herein occurred within this district.

## IV.    FACTUAL ALLEGATIONS

A.    **The Worst Forms of Child Labor in the Ivory Coast Are Used to Produce Hershey's Chocolate Products.**

21.    Ivory Coast is the world's largest producer of cocoa, the raw ingredient that makes chocolate,[13] an industry estimated to be worth more than $90 billion a year.[14]  According to the World Cocoa Foundation, "Cote d'Ivoire supplies more than 40% of the world's cocoa."[15]

22.    "For more than 50 years, Hershey has been a major buyer of West African cocoa beans, primarily Côte d'Ivoire and Ghana."[16]  In fact, in Hershey's listing of primary sourcing countries, the Ivory Coast is first.[17]

23.    Hershey acknowledges, as it must, the child and slave labor in its Ivorian supply chain for Chocolate Products.  On October 3, 2012, Hershey stated that it would "accelerate its programs to help eliminate child labor in the cocoa regions of West Africa."[18]  And in its Executive Summary for its 2014 Corporate Social Responsibility Report, Hershey stated that it was "actively involved in large-scale efforts that are committed to rooting out forced labor, especially forced child labor, in our cocoa supply chain."[19]  In the report itself, Hershey further explained: "Given the importance of chocolate in our product portfolio, our first priority has been to address the sourcing of cocoa.  Due to the complex socioeconomic circumstances in

---

[13] http://www.theguardian.com/global-development-professionals-network/2015/sep/02/child-labour-on-nestle-farms-chocolate-giants-problems-continue.

[14] http://www.bbc.com/news/world-africa-18644870.

[15] http://worldcocoafoundation.org/wp-content/uploads/Economic_Profile_of_the_US_Chocolate_Industry_2011.pdf.

[16] http://www.thehersheycompany.com/social-responsibility/cocoa-sustainability.aspx.

[17] *Hershey's Corporate Social Responsibility Report*.

[18] http://www.thehersheycompany.com/pdfs/Hershey_to_Source_100_Certified_Cocoa_by_2020.pdf; http://www.thehersheycompany.com/social-responsibility/cocoa-sustainability/cocoa-certification.aspx.

[19] http://www.thehersheycompany.com/social-responsibility/shared-goodness/downloadreport#.

COMPLAINT                                      - 9 -

West Africa, where 70 percent of the world's cocoa is cultivated and the bulk of our supply is

derived, there is a potential for human and labor rights abuses occurring within our supply chain.

That is why we are actively involved in large-scale efforts that are committed to rooting out

forced labor, especially forced child labor…in all of our chocolate products."[20] Despite these

acknowledgements, Hershey makes no disclosure regarding child or slave labor to consumers at

the point of sale and the vast majority of consumers are unaware of these human rights abuses.

24.     As the California Attorney General stated in an amicus brief filed in similar

litigation pending in California that "consumers are often unaware that the products they

purchase have been made using slavery."[21]

25.     As the Food Empowerment Project describes in its article entitled Child Labor

and Slavery in the Chocolate Industry, a "child's workday typically begins at six in the morning

and ends in the evening.[18] Some of the children use chainsaws to clear the forests.[17] Other

children climb the cocoa trees to cut bean pods using a machete. These large, heavy, dangerous

knives are the standard tools for children on the cocoa farms…. Once they cut the bean pods

from the trees, the children pack the pods into sacks that weigh more than 100 pounds when full

and drag them through the forest.[22]

26.     "Aly Diabate, a former cocoa slave, said, 'Some of the bags were taller than me.

It took two people to put the bag on my head. And when you didn't hurry, you were beaten.'

Holding a single large pod in one hand, each child has to strike the pod with a machete and pry it

open with the tip of the blade to expose the cocoa beans.  Every strike of the machete has the

potential to slice a child's flesh. The majority of children have scars on their hands, arms, legs or

---

[20] *Hershey's Corporate Social Responsibility Report.*

[21] Brief of the State of California as Amicus Curiae in Support of Appellants, *Hodsdon v Mars, Inc*, No. 16-15444, Dkt. 14 at 3 (9th Cir. Sept. 26, 2016).

[22] http://www.foodispower.org/slavery-chocolate/.

shoulders from the machetes.  In addition to the hazards of using machetes, children are also

exposed to agricultural chemicals on cocoa farms in Western Africa."[23]

27.     "Cases often involve acts of physical violence, such as being whipped for

working slowly or trying to escape.  Reporters have also documented cases where children and

adults were locked in at night to prevent them from escaping.  Former cocoa slave Aly Diabate

told reporters, 'The beatings were a part of my life.  I had seen others who tried to escape.  When

they tried, they were severely beaten.'  Drissa, a recently freed slave who had never even tasted

chocolate, experienced similar circumstances.  When asked what he would tell people who eat

chocolate made from slave labor, he replied that they enjoyed something that he suffered to

make, adding, 'When people eat chocolate, they are eating my flesh.'"[24]

28.     In *DOE I v. Nestlé USA Inc.*, the Ninth Circuit stated:

> The use of child slave labor in the Ivory Coast is a humanitarian
> tragedy.  Studies by International Labour Organization, UNICEF,
> the Department of State, and numerous other organizations have
> confirmed that thousands of children are forced to work without
> pay in the Ivorian economy.  Besides the obvious moral
> implications, this widespread use of child slavery contributes to
> poverty in the Ivory Coast, degrades its victims by treating them as
> commodities, and causes long-term mental and physical trauma.[25]

**1.     In 2001 the Industry Agrees to the Harkin-Engel Protocol and Promises to
Eliminate the Worst Forms of Child Labor in the Ivory Coast by 2005.**

29.     In 2001, the Chocolate Manufacturers Association of the United States of

America signed the *Protocol for the Growing and Processing of Cocoa Beans and their*

*Derivative Products in a Manner that Complies with ILO Convention 182 Concerning the*

*Prohibition and Immediate Action for the Elimination of the Worst Forms of Child Labor*

---

[23] *Id.*

[24] *Id.*

[25] 766 F.3d 1013, 1017 (9th Cir. 2014).

("Harkin-Engel Protocol").[26]  Hershey was a signatory to this agreement, which "acknowledged the problem of forced child labor in West Africa."  The Harkin-Engel Protocol noted that "while the scope of the problem is uncertain, the occurrence of the worst forms of child labor in the growing and processing of cocoa beans and their derivative products is simply unacceptable." Accordingly, the industry committed to develop and implement standards of public certifications by July 1, 2005, "that cocoa beans and their derivative products have been grown and/or processed without any of the worst forms of child labor."  Hershey, and the other signatories, promised to work "wholeheartedly…to fulfill the letter and spirit of this Protocol, and to do so in accordance with the deadlines prescribed herein."[27]

## 2. The Industry Breaks this Promise Repeatedly in a Series of Follow-up Statements Postponing Their Deadline to 2008, to 2010, and Now to 2020.

30.     In a series of subsequent Joint Statement, the chocolate industry effectively kicks the can down the road on its promises.

31.     On July 1, 2005, the industry issued a Joint Statement acknowledging that "[i]n September 2001, chocolate and cocoa industry representatives signed an agreement, developed in partnership with Senator Harkin and Representative Engel, to eliminate the worst forms of child labor in the growing of cocoa beans and their derivative products from West Africa.  But "the July 1, 2005 deadline will not be fully met."  That being said, the industry "assured Sen. Harkin and Rep. Engel that it is fully committed to achieving a certification system, which can be expanded across the cocoa-growing areas of West Africa and will cover 50% of the cocoa growing areas of Cote d'Ivoire and Ghana within three years."  Senator Harkin stated, that he was "disappointed that the July 1 deadline established in the Protocol was not fully met," but he

---

[26] The protocol was established by Senator Tom Harkin and Congressman Eliot Engel. http://www.ilo.org/washington/areas/elimination-of-the-worst-forms-of-child-labor/WCMS_159486/lang--en/index.htm.

[27] mvoplatform.nl/about-us/publications-en/Publication_2380.

was "pleased that they have committed to redouble their efforts to create a certification system and eliminate the worst forms of child labor and forced labor in the cocoa fields and throughout the supply chain."[28]

32.     Unable to meet the new self-imposed deadline, on June 16, 2008, the industry issued another Joint Statement promising "to have a sector-wide independently verified certification process fully in place across each country's cocoa-growing sector by the end of 2010."[29]

33.     Again unable to meet the new self-imposed deadline, on September 13, 2010, the industry issued yet another Joint Statement promising "[b]y 2020, the establishment and implementation of a credible and transparent sector-wide monitoring system across cocoa growing regions in the two countries" and – instead of the elimination promised in 2001 – "the worst forms of child labor as defined by ILO Convention 182 in the cocoa sectors of Côte d'Ivoire and Ghana will be reduced by 70 percent."[30]  Hershey also asserts that "it will source 100 percent certified cocoa for its global chocolate product lines by 2020."[31]  Only 30% of its cocoa was certified in 2014,[32] and only 50% by the end of 2015.[33]

---

[28] www.cacao.gouv.ci/commun/documents/jointstatementSenateurTomHarkin.pdf.

[29] http://www.csrwire.com/press_releases/14132-Joint-Statement-from-U-S-Senator-Tom-Harkin-Representative-Eliot-Engel-and-the-Chocolate-and-Cocoa-Industry-on-the-Implementation-of-the-Harkin-Engel-Protocol-.

[30] http://www.dol.gov/ilab/projects/summaries/GhanaSignedDeclaration.pdf; http://www.dol.gov/ilab/projects/summaries/CocoaFrameworkAction.pdf.

[31] http://www.thehersheycompany.com/social-responsibility/cocoa-sustainability/cocoa-certification.aspx; http://www.thehersheycompany.com/pdfs/Hershey_to_Source_100_Certified_Cocoa_by_2020.pdf

[32] *Hershey's Corporate Social Responsibility Report*.

[33] https://www.thehersheycompany.com/en_us/responsibility/good-business/responsible-sourcing.html#tab3

**3.    Meanwhile the Worst Forms of Child Labor in the Ivory Coast Continue – with a Recent Report Commissioned by the U.S. Department of Labor Finding That They Have Become Even More Prevalent.**

34.    In order to assess the chocolate industry's progress in meeting the Harkin-Engle

Protocol, the Department of Labor contracted with the Payson Center for International

Development of Tulane University, awarding it a $4.3 million contract in 2006.

35.    "As part of the Tulane-USDOL contract, Tulane studies progress made towards

the elimination of the Worst Forms of Child Labor (WFCL) and Forced Adult Labor (FAL) in

the cocoa sector of Cote d'Ivoire and Ghana and towards meeting obligations under the Harkin-

Engel Protocol, a voluntary agreement against the WFCL and FAL signed in September 2001 by

the Chocolate Manufacturers Association (CMA) and the World Cocoa Foundation (WCF) and

witnessed by the congressional offices of U.S. Sen. Tom Harkin (D-Iowa) and U.S. Rep. Eliot

Engel (D-N.Y.)."[34]

36.    "Since the start of the Tulane-USDOL collaboration in October 2006, Tulane has

implemented several representative population-based household surveys of child labor in the

cocoa sector, examined efforts by the international cocoa/chocolate industry and the

governments of Côte d'Ivoire and Ghana to establish child labor monitoring, certification and

verification systems, studied remediation activities and other interventions against the WFCL

and FAL in the cocoa sector financed by the cocoa/chocolate industry and trained government

officials in Cote d'Ivoire and Ghana to remediate the WFCL and monitor the number of children

working in this sector. Tulane's research findings are reported in annual reports to the U.S.

Congress.[35]

---

[34] http://childlabor-payson.org/.

[35] *Id.*

37.     On March 31, 2011, the Payson Center released its report entitled, "Oversight of Public and Private Initiatives to Eliminate the Worst Forms of Child Labor in the Cocoa Section in Cote d'Ivoire and Ghana."[36]  The report found that the chocolate industry's funding "has not been sufficient in light of its commitment to eliminate [the Worst Forms of Child Labor] in the cocoa sectors of Ghana and Cote d'Ivoire as per Article 1 of the Protocol."  The report found that "important provisions of the Protocol have not yet been realized." For example, the chocolate industry has not met Article 6, "a key tenet of the Protocol with a 2005 deadline," because the chocolate industry "has only partly developed and not enforced industry-wide standards upholding ILO Convention 182 in the cocoa sectors of Cote d'Ivoire and Ghana."  Rather, "the present level of Industry engagement of product certifiers allows these certifiers to cover only a small fraction of cocoa producing regions in each country."

38.     The 2011 report further found that the chocolate industry had failed to achieve "its Joint Statement 2005 commitment to cover 50 percent of the two countries' cocoa-producing areas by July 2008 and has yet to accomplish the goals of the Joint Statement 2008 commitment of reaching 100% of the cocoa growing regions of both countries with remediation activities by the end of 2010."  And it was not even close – the report found that remediation activities had only reached 3.8% of the cocoa growing region in the Ivory Coast.[37]  Thus, the children in the region continue to engage in the Worst Forms of Child Labor, including hazardous work like carrying heavy loads, weeding and breaking cocoa pods using machetes, and spraying chemicals without any protective gear.

39.     As CNN reported in 2012, "[d]uring the course of an investigation for [it]'s Freedom Project initiative – an investigation that went deep into the cocoa fields of Ivory Coast –

---

[36] http://childlabor-payson.org/Tulane%20Final%20Report.pdf.

[37] *Id*.

a team of CNN journalists found that child labor, trafficking and slavery are rife in an industry

that produces some of the world's best-known brands."[38]   CNN reported on its encounter with

one such modern child slave:

> Chocolate's billion-dollar industry starts with workers like
> Abdul. He squats with a gang of a dozen harvesters on an Ivory
> Coast farm.
> Abdul holds the yellow cocoa pod lengthwise and gives it two
> quick cracks, snapping it open to reveal milky white cocoa
> beans. He dumps the beans on a growing pile.
>
> Abdul is 10 years old, a three-year veteran of the job.
> He has never tasted chocolate.
>
> [¶]
>
> When Abdul's mother died, a stranger brought him across the
> border to the farm. Abdul says all he's given is a little food, the
> torn clothes on his back, and an occasional tip from the farmer.
> Abdul is a modern child slave.

40.     As the U.S. Department of Labor itself reported in 2013, "children in Côte

d'Ivoire continue to engage in the worst forms of child labor in agriculture, particularly on cocoa

farms, sometimes under conditions of forced labor."  The DOL further reported that over half of

these children "were estimated to report injuries from dangerous activities" and that "[c]hildren

from neighboring West African countries are trafficked into Côte d'Ivoire for agricultural labor,

especially in cocoa production."[39]

---

[38] http://thecnnfreedomproject.blogs.cnn.com/2012/01/19/child-slavery-and-chocolate-all-too-easy-to-find/.

[39] http://www.dol.gov/ilab/reports/child-labor/findings/2013TDA/cotedivoire.pdf.

41.     The most recent report prepared by the Payson Center for International Development of Tulane University and sponsored by the U.S. Department of Labor is dated July 30, 2015, and entitled "Survey Research on Child Labor in West African Cocoa Growing Areas."  The summary document for the ninety-nine page report states that "***the numbers of children working in cocoa production, in child labor in cocoa production, and in hazardous work in cocoa production have increased from 2008/09 to 2013/14***," with the number of children doing hazardous work in cocoa production growing by 46%.[40]

42.     Thus, Fair Trade International reported on August 4, 2015, that the "2013/2014 Survey Research on Child Labor in West African Cocoa-Growing Areas released last week by the Tulane University shows that child labor in cocoa production is on the rise in West Africa."[41]

43.     More specifically, the 2015 Payson Report found that during the time period from 2013 to 2014 over 1.1 million children in the Ivory Coast were engaged in the most common Worst Forms of Child Labor, hazardous work, including the use of dangerous tools, transport of heavy loads, and exposure to pesticides.  This was up from the 791,181 children engaged in such work at the time of the last survey in 2008 to 2009.  Put another way, the 22% of children engaged in such labor in 2008 to 2009 had increased to 31% of children in 2013 and 2014.[42]

44.     "The 2015 Payson Report concluded that "[a]fter increases in the total number of children working in the cocoa sector in both countries combined, 1.5 million children still have to be removed from hazardous work by 2020 in order to reach the Framework of Action target." However, "[w]ith production growing and increasing global demand for cocoa beans, production

---

[40] http://www.childlaborcocoa.org/index.php/2013-14-final-report.

[41] http://fairtradeamerica.org/post/125861349722/childrens-involvement-in-west-african-cocoa

[42] http://www.childlaborcocoa.org/index.php/2013-14-final-report.

methods and/or child labor mitigation strategies need to change drastically to achieve major progress."[43]

46.     As the Fair Labor Association noted with respect to another major U.S. chocolate manufacturer, although "Nestlé does not own or operate farms in Côte d'Ivoire," it "is well positioned to make a positive impact on the livelihoods of workers in the cocoa supply chain … due to its leverage with its suppliers and the volume of cocoa beans it procures."[44]  Likewise, Hershey has had the opportunity to take effective advantage of such leverage since 2001 to eliminate child and slave labor from its Ivorian supply chain as it promised, but it has failed to do so – and accordingly it has failed an entire generation of West African children.

46.     In sum, Hershey's intention to obtain 100% of its cocoa from certified sources by 2020 – whether it comes true or not – does not free Hershey from its obligation to provide disclosures to consumers at the point of sale regarding the existence of child and slave labor that indisputably has existed and continues to exist in Hershey's supply chain for Chocolate Products. And even were the Ivorian human rights abuses a problem that Hershey was powerless to resolve (it is not), Hershey would still be obligated to disclose to consumers at the point of sale the existence of child and slave labor in its supply chain for Chocolate Products.  The vast majority of consumers are not aware of the human rights abuses and reasonable consumers would not have purchased Hershey Chocolate Products had they known the truth.

**B.     Hershey Fails to Disclose the Use of the Worst Forms of Child Labor in Its Supply Chain.**

47.     As explained by another major U.S. chocolate manufacturer, in the Ivory Coast, the "journey from the cocoa bean to the chocolate … starts with the farmer, who sells his crop

---

[43] *Id.*

[44] http://www.nestle.com/Media/NewsAndFeatures/fla-report-cocoa; http://www.nestlecocoaplan.com/nestle-sets-out-actions-to-address-child-labour/.

either to a cooperative or a pisteur. There are about 700 cooperatives in the country and around

5,000 independent pisteurs.  These are roving buyers/salesmen who call on farmers to buy as

much cocoa as they can. They're called pisteurs because they go up and down the pistes or rough

tracks which lead to the cocoa villages.  The cooperatives and pisteurs sell to larger middlemen

called traitants, who in turn sell to exporters, who sell to traders who sell to processors."  "The

beans from many different trees and farms are then combined and increasingly larger quantities

are sold from one buyer to the next until the beans reach the shipping port. Here, beans from

literally thousands of villages are combined into large shipments to countries across the world."[45]

48.     According to the World Cocoa Foundation, "47% of the total U.S. imports of

cocoa beans come from Cote d'Ivoire."[46]

49.     Hershey works with large intermediaries like Barry Callebault, ECOM, Cargil,

and ADM to import its cocoa.  Hershey then purchases cocoa from these entities and uses the

cocoa to manufacture its Chocolate Products, which are distributed to retail locations throughout

the U.S.

50.     At the retail location, a consumer reviewing the packaging for Hershey Chocolate

Products will find no disclosure that there is child and/or slave labor in the supply chain:

---

[45] http://www.nestlecocoaplan.com/wp-content/uploads/2012/06/ABOUT-THE-NESTLE-COCOA-PLAN.pdf.

[46] http://worldcocoafoundation.org/wp-content/uploads/Economic_Profile_of_the_US_Chocolate_Industry_2011.pdf.







51.     While Hershey does market Dagoba and Scharffen Berger products as certified by the Rainforest Alliance,[47] their labels either simply reference the certification or innocuously state that Rainforest Alliance Certified farms "promote the rights and well-being of workers" – so as to not tip off the vast majority of consumers who do not know about the child and slave labor that otherwise admittedly exists in Hershey's supply chain for Chocolate Products.  For those who are aware, Rainforest Alliance is a certification that does not permit such labor.[48] Hershey's Dagoba and Scharffen Berger products are excluded from the Chocolate Products.

52.     In sum, nowhere on the packaging for any of the Chocolate Products is there any disclosure to the consumer of the child and/or slave labor conditions used to produce the cocoa beans in Hershey's Ivorian supply chain, as there should be on all of the Chocolate Products.

**C.     Hershey Recognizes that the Use of Child or Slave Labor in its Supply Chain Is Wrong.**

53.     Hershey explicitly states in its 2014 Corporate Social Responsibility Report that it "has zero tolerance for the worst forms of child labor in its supply chain (as defined by International Labor Organization Conventions 138 and 182)."[49]

54.     In its Supplier Code of Conduct, Hershey likewise states that it "is committed to the elimination of the 'worst forms of child labor,' as defined by International Labor Organization (ILO) Convention 138 & 182, from its supply chain."[50]  Hershey specifically lists the following prohibited child labor practices – all of which occur in its supply chain for Chocolate Products:

---

[47] http://www.thehersheycompany.com/social-responsibility/cocoa-sustainability/cocoa-certification.aspx.

[48] http://www.rainforest-alliance.org/work/agriculture.

[49] *Hershey's Corporate Social Responsibility Report.*

[50] https://www.thehersheycompany.com/assets/pdfs/hersheycompany/Supplier-Code-of-Conduct-Requirements.pdf.

- Children should not be kept from school to work on the farm.

- Children should not carry heavy loads that harm their physical development.

- Children should not be present on the farm while farm chemicals are applied.

- Young children, generally considered to be under 14 years of age, should not use sharp implements.

- Trafficking of children or forcing children to work are included among the Worst Forms of Child Labor (WFCL).

  [¶]

- Suppliers must not utilize or benefit in any way from forced or compulsory labor, including any forms of slavery.

- The recruitment, transportation, transfer, harboring or receipt of persons, by means of the threat or use of force, coercion or other means, for the purpose of exploiting them is prohibited.[51]

55.    And Hershey "reserves the right to terminate its business relationship with a Supplier who is unwilling to comply with the Code."[52]

56.    In summary, although Hershey recognizes that the use of child and/or slave labor in its supply chain is wrong and its corporate social responsibility report and supplier code explicitly forbid child and slave labor by its suppliers, it materially omits to disclose to

---

[51] *Id.*

[52] *Id.*

consumers at the point of purchase that there is child and/or slave labor in its supply chain for the cocoa beans used to make its Chocolate Products.

**D.    Hershey's Use of the Worst Forms of Child Labor in Its Chocolate Products Supply Chain Is Material to Consumers Who Are Generally Left Unaware Without Disclosure at the Point of Sale.**

57.    Consumers have become sensitive to the human cost behind the products that they buy.  This sensitivity transcends industries and ranges from products as diverse as clothing to coffee.

58.    A Harvard University study examined consumer willingness to pay a premium for coffee certified as Fair Trade on eBay.[53]  A Fair Trade certification requires, amongst other things, that the producer not use slave and child labor in the production of its coffee.[54]  The study found that consumers in online auctions were willing to pay an average of 23% more for coffee certified as Fair Trade.[55]

59.    A 2006 study by researchers at the University of Michigan analyzed consumer purchases to determining consumer willingness to pay a premium for athletic socks marked with a Good Working Conditions ("GWC") label.[56]  The study concluded that 30% of consumers in a working class neighborhood of Detroit were willing to pay a 20% price premium (from $1.00 to $1.20) for GWC labeled socks compared to non-GWC labeled socks.[57]

---

[53] *See* Michael J. Hiscox, Michael Broukhim,& Claire S. Litwin, *Consumer Demand for Fair Trade: New Evidence From A Field Experiment Using eBay Auctions of Fresh Roasted Coffee* (Mar. 16, 2011), http://scholar.harvard.edu/files/hiscox/files/ consumerdemandfairlaborstandardsevidencecoffee.pdf (last visited Aug. 17, 2015).

[54] *Id*. at 4.

[55] *Id*. at 3, 23.

[56] Howard Kimeldorf, Rachel Meyers, Monica Prasad, & Ian Robinson, *Consumers with a Conscience: Will They Pay More?* (Winter 2006), 24 *available at* http://www.npr.org/documents/ 2013/may/consumer_conscience_study_ME_20130501.pdf (last visited Aug. 17, 2015).

[57] *Id*.

60.     A 2011 study lead by researchers at Harvard University studied consumer willingness to pay a premium for polo shirts sold with an SA8000 certification on eBay.[58]  The SA8000 certification prohibits the use of child labor and slave labor and discrimination based on race, gender, and religion.  The code mandates that workers be allowed to organize and bargain collectively with their employers.  The SA8000 code also requires that workplaces satisfy minimum health and safety standards, pay minimum (living) wages, and that overtime work is voluntary, limited, and paid at a premium.[59]  "On average, shoppers paid a 45% premium for labeled versus unlabeled shirts.  The findings suggest that there is substantial consumer support for fair labor standards, even among price-sensitive eBay shoppers."[60]

61.     Another survey by FishWise, a non-profit marine conservation organization, further elucidates consumer willingness to pay when there are human rights abuses in supply chains.  Eighty-eight percent of consumers stated that they would stop buying a product if it was associated with human rights abuses.[61]  The survey further revealed that 70% percent of consumers would pay more for a product certified to be free of human rights abuses.[62]  FishWise noted that, "survey results indicate that human rights are important to seafood consumers and

---

[58] Michael J. Hiscox, Michael Broukhim, Claire S. Litwin. Andrea Woloski, *Consumer Demand For Fair Labor Standards: Evidence From a Field Experiment on eBay* (Apr. 2011), 3 http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1811788 (last visited Aug. 17, 2015).

[59] *Id*. (citing http://www.sa-intl.org/_data/n_0001/resources/live/2008StdEnglishFinal.pdf) (last visited Aug. 17, 2015).

[60] Michael J. Hiscox, Michael Broukhim, Claire S. Litwin. Andrea Woloski, *Consumer Demand For Fair Labor Standards: Evidence From a Field Experiment on eBay* (Apr. 2011), 3, 22.

[61] FishWise, *Trafficked II: An updated summary of human rights abuses in the seafood industry* (2014), at p. 6, available at http://www.fishwise.org/services/human-rights.

[62] *Id*.

many of them are willing to avoid high risk products and pay more for those that are certified to be free of abuses."[63]

62.     These surveys establish that the child and slave labor in Defendants' supply chain is material to consumers, who are generally unaware, assume otherwise, and would not have purchased Defendants' Chocolate Products had they known the truth.

63.     Moreover, fellow chocolate manufacturer Nestlé has examined the "materiality" to its "stakeholders" of key issues facing Nestlé worldwide.  Consumers of Nestlé products were among the stakeholders surveyed.[64]  Nestlé found "[h]uman rights" to be of "significant" concern to consumers.  This means "[p]romoting respect for the basic rights and freedoms to which all people are entitled" in "Child labour; Labour rights; [and] Human rights in the upstream supply chain.[65]  Nestlé recognized that "consumers and other stakeholders" are "increasingly looking for information" about not just "where our ingredients originate" but "how they were produced." And it stated that "responsible sourcing," including "traceability and transparency throughout our supply chains," has "never been more important."[66]

64.     Further, point of sale is the critical time to be transparent.  "Product packaging is crucial," according to Nestlé, to "inform consumers."[67]  "Responsible marketing" and, in particular, "[p]roduct labelling" is of "[m]ajor" concern to customers.[68]

---

[63] *Id*. at 7.

[64] Nestlé, Nestlé in Society (2014) (full report), at p. 11, available at http://www.nestle.com/asset-library/documents/library/documents/corporate_social_responsibility/nestle-csv-full-report-2014-en.pdf.

[65] *Id*. at 15, 197.

[66] *Id*. at 88.

[67] *Id*. at 165.

[68] *Id*. at 11-12.

65.     Hershey is also well aware of the consumer concern about human rights abuses in supply chains and has thus mounted its extensive public relations effort to position itself as a company that does not permit child and slave labor in its supply chain.  Its hollow public relations statements mask the tragic truth that millions of African children are engaged in the Worst Forms of Child Labor.  Had consumers known the truth, they would not have purchased or paid as much for Hershey Chocolate Products.

## V.      CLASS ACTION ALLEGATIONS

66.     Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks certification of a Class defined as follows:

> All consumers who purchased Hershey Chocolate Products in Massachusetts during the four years prior to the filing of the complaint.

67.     Excluded from the Class are Defendants; the officers, directors or employees of Defendant; any entity in which Defendants have a controlling interest; and any affiliate, legal representative, heir or assign of Defendants.  Also, excluded from the Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

68.     Plaintiff does not know the exact number of Class Members at the present time. However, due to the nature of the trade and commerce involved, there appear to be millions of Class Members such that joinder of all Class members is impracticable.

69.     The Class is ascertainable by objective criteria permitting self-identification in response to notice, and notice can be provided through techniques similar to those customarily used in other consumer fraud cases and complex class actions, and through Hershey's business records.

70.     There are questions of law and fact common to the Class.  Defendants' unlawful omissions similarly impact Class Members, all of who purchased one or more Chocolate Products.

71.     Plaintiff asserts claims that are typical of the Class.  Plaintiff and all Class Members have been subjected to the same wrongful conduct because they all have purchased Defendants' Chocolate Products that were not disclosed as having child and/or slave labor in the supply chain.  As a result, and like other members of the Class, Plaintiff purchased and paid an amount for Chocolate Products which she otherwise would not have paid.

72.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff is represented by counsel competent and experienced in both consumer protection and class action litigation.

73.     Class certification is appropriate because Defendants have acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

74.     Class certification is also appropriate because common questions of law and fact substantially predominate over any questions that may affect only individual members of the Class, including, *inter alia*, the following:

a.     Whether Defendant knew that there was child and slave labor in its Chocolate Products supply chain;

b.     Whether Defendant failed to disclose the child and slave labor in its Chocolate Products supply chain;

c.     Whether the child and slave labor in the Chocolate Products supply chain would be material to a reasonable consumer;

    d.      Whether Defendant's material omission had the capacity to deceive a reasonable consumer;

    e.      Whether Defendant's conduct violates the Massachusetts Consumer Protection Law;

    f.      Whether Defendant has been unjustly enriched;

    g.      Whether the challenged practices harmed Plaintiff and members of the Class; and

    h.      Whether Plaintiff and members of the Class are entitled to damages, trebling, restitution, and injunctive or other relief.

75.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class Members is impracticable.  Furthermore, because the restitution and/or damages suffered, and continue to be suffered, by each individual Class Member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class Members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous.

76.    The prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.  In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

## VI.    CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION ACT
### (G.L. CHAPTER 93A)

77.    Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

78.    This cause of action is brought by Plaintiff pursuant to the Massachusetts Consumer Protection Act, G.L. Chapter 93A §§ 2, 9 *et. seq*, on behalf of the Class.  Section 2 of

the Massachusetts Consumer Protection Act provides that "[u]nfair methods of competition and

unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared

unlawful."

79.     Plaintiff, Class Members, and Defendants are "persons" under the Massachusetts

Consumer Protection Act pursuant to G.L. Chapter 93A § 1(a).

80.     Chocolate Products are tangible goods involved in "trade" and "commerce"

subject to the Massachusetts Consumer Protection Act pursuant to G.L. Chapter 93A § 1(b).

81.     At all relevant times, Defendants violated and continues to violate the

Massachusetts Consumer Protection Act in its transactions regarding its Chocolate Products.

82.     Defendants have knowledge of the child and slave labor in its supply chain based

on its admissions set forth above, as well as based on its years of experience marketing and

distributing chocolate products made from West African cocoa beans; its partnership with West

African exporters; its responsibility for enforcing its supplier code, which forbids child and slave

labor; and its failed efforts in conjunction with the Chocolate Manufacturers Association to make

good on the promise to eliminate the worst forms of child labor from the West African supply

chain by 2005 (and then by 2008 and 2010).

83.     The worst forms of child labor, including dangerous child labor and slave labor, is

material to consumers, who care about human rights abuses in supply chains and would not have

purchased the Chocolate Products had they known the truth.  But Defendants failed to disclose

this information to consumers at the point of sale.  So consumers did not know the truth.

84.     Indeed, consumers do not know or expect that children as young as five years old

work all day clearing the forest, spraying pesticides, cutting down cocoa bean pods from trees

with machetes, and dragging heavy sacks through the forest—and that many were abducted from

their families, sold into slavery, and forced to work without pay and subject to harsh physical punishment.

85.     As set forth above, Defendants' material omissions in the labeling of its Chocolate Products is deceptive because it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted, *i.e.*, the omissions enticed reasonable consumers to purchase the Chocolate Products when they would not have had they known the truth.

86.     As set forth above, Defendants' material omissions in the labeling of its Chocolate Products is also unfair to consumers. Purchasing products one would not have otherwise purchased and the unwitting support of child and slave labor causes substantial injury to consumers. Defendants' undisclosed participation in supply chains making use of the worst forms of child labor is immoral, unethical, oppressive, unscrupulous, unconscionable, and offends established and internationally recognized public policies against the use of child and slave labor.

87.     For example, the United Nation's International Labor Convention No. 182 prohibits the worst forms of child labor[69] and has been ratified by the United States.[70] The worst forms of child labor include the compulsory labor of trafficked children and the labor of children involving dangerous tools, transport of heavy loads, and exposure to toxic substances, *i.e.*, hazardous work,[71] which occurs in Hershey's supply chain, as set forth above. In addition, the United Nation's 1948 Universal Declaration of Human Rights states that "No one shall be held

---

[69] http://www.ilo.org/public/english/standards/relm/ilc/ilc87/com-chic.htm.

[70] http://www.ilo.org/dyn/normlex/en/f?p=NORMLEXPUB:11300:0::NO:11300:P11300_INSTRUMENT_ID:312327:NO.

[71] Complaint, ¶ 4.

in slavery or servitude; slavery and the slave trade shall be prohibited in all their forms,"[72] and

the United States was one of the original countries voting to adopt it.[73]

88.      Hershey's conduct also impairs competition within the market for chocolate

products, and prevents Plaintiff and Class Members from making fully informed decisions about

the kind of chocolate products to purchase and the price to pay for such products.

89.      Plaintiff and members of the Class were directly and foreseeably injured by

Hershey's conduct and lost money as a result of Hershey's material omissions, because they

would not have purchased nor paid as much for Chocolate Products had they known the truth.

90.      Accordingly, Plaintiff requests that this Court enter such orders or judgments as

may be necessary to enjoin Defendants from continuing their unfair and deceptive business

practices, to compensate Plaintiff and members of the Class for their damages plus trebling, to

award attorneys' fees and costs, and to provide such other relief as set forth below.

## COUNT II
## UNJUST ENRICHMENT

91.      Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

92.      To the detriment of Plaintiff and Class Members, Defendant has and continues to

be unjustly enriched as a result of the wrongful conduct alleged herein.  Defendant has unjustly

benefited by receiving payments for Chocolate Products that would not have been possible

absent the wrongful conduct.  Between the parties, it would be unjust for Defendant to retain the

benefits attained by its wrongful actions.

---

[72] http://www.un.org/en/documents/udhr/index.shtml.

[73] https://web.archive.org/web/20130927221000/http://unyearbook.un.org/1948-49YUN/1948-49_P1_CH5.pdf_at 535.

COMPLAINT                                    - 33 -

93.     Accordingly, Plaintiff and Class Members seek full restitution of Defendant's enrichment, benefits, and ill-gotten gains acquired as a result of the wrongful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter a judgment against Defendants and in favor of Plaintiff, and grant the following relief:

A.     Determine that this action may be maintained as a class action with respect to the Class identified herein and certify it as such under Rules 23(b)(2) and/or 23(b)(3), or alternatively certify all issues and claims that are appropriately certified, and designate and appoint Plaintiff as Class Representatives and their counsel as Class Counsel;

B.     Declare, adjudge and decree that Defendants violated the Massachusetts Consumer Protection Law and was unjustly enriched;

C.     Enjoin Defendants from continuing the unfair and deceptive marketing and sale of their Chocolate Products;

D.     Award Plaintiff and the Class all appropriate damages, including trebling;

E.     Award Plaintiff and the Class reasonable attorneys' fees, costs, and pre- and post-judgment interest; and

F.     Award Plaintiff and the Class such other further and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

## JURY TRIAL DEMAND

Plaintiff, by counsel, requests a trial by jury for all claims so triable.

20

Dated:  February 26, 2018

Respectfully submitted,

*/s/ Hannah W. Brennan*
Hannah W. Brennan (#688179)
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
(617) 482-3700
*hannahb@hbsslaw.com*

Steve W. Berman (*pro hac vice to be filed*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
(206) 623-7292
*steve@hbsslaw.com*

Elaine T. Byszewski (*pro hac vice to be filed*)
301 N. Lake Avenue, Suite 920
Pasadena, CA  91101
(213) 330-7150
elaine@hbsslaw.com

*Attorneys for Plaintiff and the Proposed Class*